# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RICKY RAYMOND SCHUH,<br><br>            Plaintiff,<br><br>  vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>           Defendant. | No. 1:16-CV-03127-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 13, 18 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 13, 18. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 13) and grants Defendant's motion (ECF No. 18).

1                        **JURISDICTION**

2        The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

3   1383(c)(3).

4                      **STANDARD OF REVIEW**

5        A district court's review of a final decision of the Commissioner of Social

6   Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

7   limited; the Commissioner's decision will be disturbed "only if it is not supported

8   by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

9   1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a

10  reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

11  (quotation and citation omitted). Stated differently, substantial evidence equates to

12  "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

13  citation omitted). In determining whether the standard has been satisfied, a

14  reviewing court must consider the entire record as a whole rather than searching

15  for supporting evidence in isolation. *Id.*

16        In reviewing a denial of benefits, a district court may not substitute its

17  judgment for that of the Commissioner. If the evidence in the record "is

18  susceptible to more than one rational interpretation, [the court] must uphold the

19  ALJ's findings if they are supported by inferences reasonably drawn from the

20  record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title XVI supplemental security income and for Title II child's insurance benefits on August 23, 2012, alleging a disability onset date of August 8, 2008. Tr. 328-38. The application was denied initially, Tr. 80-97, 116-39, 187-90, and on reconsideration, Tr. 98-113. Plaintiff failed to appear for a hearing before an Administrative Law Judge (ALJ) on June 24, 2014; however testimony was taken at that hearing from a Vocational Expert (VE). Tr. 41-51. Plaintiff provided good cause for his failure to appear, Tr. 278, and a new hearing was set. Tr. 281-320. Plaintiff appeared at a rescheduled hearing before an ALJ on January 12, 2015. Tr. 52-79. On March 30, 2015, the ALJ denied Plaintiff's claim. Tr. 19-40.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 8, 2008, the alleged onset date. Tr. 24. At step two, the ALJ found Plaintiff has the following severe impairments: borderline intellectual functioning, dysthymia, anxiety disorder not otherwise specified, antisocial personality disorder, alcohol dependence in reported remission, and cannabis abuse in reported remission. Tr. 25. At step three, the ALJ found Plaintiff does not have

an impairment or combination of impairments which meets or medically equals a listed impairment. Tr. 25. The ALJ then concluded Plaintiff has the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations:

> [The claimant] is limited to tasks that can be learned in 30 days or less, involving no more than simple work-related decisions and few workplace changes. He is limited to rare (<10% of workday) public interaction. He is able to work with coworkers on a casual or superficial basis, but would not do well as a member of a highly interactive or interdependent work group.

Tr. 26.

At step four, the ALJ found that Plaintiff is able to perform past relevant work. Tr. 33. On that basis, the ALJ concluded Plaintiff is not disabled as defined in the Social Security Act. Tr. 33. Alternatively, at step five, after considering the testimony of a vocational expert, the ALJ found there are jobs that exists in significant numbers in the national economy that the claimant can perform, such as kitchen helper, industrial cleaner, or laundry worker II. Tr. 34. On that alternative basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social Security Act. Tr. 35.

On May 7, 2016, the Appeals Council denied review, Tr. 1-7, making the Commissioner's decision final for purposes of judicial review. *See* 42 U.S.C. 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying

him child insurance benefits under Title II and supplemental security income under

Title XVI of the Social Security Act. ECF No. 13. Plaintiff raises the following

issues for this Court's review:

1. Whether the ALJ properly considered the Plaintiff's symptom

   complaints;

2. Whether the ALJ properly formulated the RFC; and

3. Whether the ALJ erred in not considering Listing 12.05C.

ECF No. 13 at 6.

**DISCUSSION**

**A. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting his symptom claims. ECF No. 13 at 7-16.

An ALJ engages in a two-step analysis to determine whether a claimant's

testimony regarding subjective pain or symptoms is credible. "First, the ALJ must

determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

"The claimant is not required to show that [his] impairment could reasonably be

expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's

daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "are not entirely credible." Tr. 28.

*1. Treatment History*

First, the ALJ found Plaintiff's treatment history was inconsistent with his allegations of disabling symptoms. Tr. 28-29. Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony. 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v). The ALJ is permitted to consider the claimant's lack of treatment in making a credibility determination, except where the claimant lacks the funds to pursue treatment. *Trevizo v. Berryhill*, 862 F.3d 987, 1002-03 (9th Cir. 2017) (citing *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)).

Here, the ALJ summarized the medical records and concluded that Plaintiff's "lack of treatment ...strongly suggests that his impairments and limitations ... were not as serious as alleged in connection with this application." Tr. 28. In evaluating Plaintiff's explanation that he did not receive treatment due to financial constraints, the ALJ concluded, "while he was of limited means, he

was receiving some State assistance (*see* [Tr. 387]) and thus, was not totally precluded from receiving medical assistance." Tr. 29.

The document the ALJ cited is a September 2003 memorandum, indicating at that time, Plaintiff had access to Washington Department of Children and Family Services (DCFS) medical coupons. Tr. 387. Defendant contends this document shows Plaintiff was under the care of the DCFS and able to see a doctor and seek mental health treatment. ECF No. 18 at 5. While that may be true, this document does not demonstrate that Plaintiff had insurance or access to health care at any time near the alleged onset date or after the alleged onset date. Given Plaintiff alleged on onset date of 2008, five years after the document on which the ALJ relied was issued, it is quite possible Plaintiff lost any medical insurance provided by DCFS.[1] The ALJ's conclusion is not supported by substantial evidence. The ALJ's reliance on a single document dated in 2003, five years prior

---

[1] Plaintiff was born on August 8, 1989. Tr. 24. Accordingly, he was 14 years old when the 2003 document was created, indicating he had access to DCFS medical coupons. The document noted that Plaintiff was one of the "Smokey Point DCFS children." Tr. 387. However, Plaintiff was 19 years old on August 8, 2008, the alleged onset date. Tr. 24.

to the alleged onset date, was not a clear and convincing reason to reject Plaintiff's claim of failure to seek treatment due to indigence.

However, an error is harmless where, as discussed *infra*, the ALJ lists additional reasons, supported by substantial evidence, for discrediting Plaintiff's symptom complaints. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

### 2. Lack of Objective Medical Evidence

Next, the ALJ found the objective evidence does not support the degree of symptoms alleged. Tr. 29. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). Medical evidence is a relevant factor, however,

in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Here, the ALJ noted that the file contains very few treatment records and that to the extent records exist, Plaintiff's subjective complaints are out of proportion to the clinical and laboratory findings. Tr. 28-29. As examples, the ALJ noted that school records from 2001 to 2002 documented that Plaintiff was in a structured special education program. Tr. 28. Testing revealed an overall score in the borderline intellectual functioning, but his verbal score was in the average range, and the testing at the time did not support a diagnosis of mental disability. Tr. 28 (citing Tr. 411). Some teachers noted learning delays, distractibility, and aggressive oppositional behavior, while others indicated no behavioral problems. Tr. 28 (citing Tr. 391, 411).

Next, the ALJ noted that Department of Corrections' records from August 2011 indicated that Plaintiff was "healthy" with normal behavior on examination with no current symptoms, including no symptoms of psychosis, depression, anxiety, or aggression. Tr. 28 (citing Tr. 428-29). Plaintiff stated that he did not feel that he needed any mental health services. Tr. 429.

1    The ALJ similarly found that Plaintiff's symptom complaints were not

2    supported by more recent evaluations, which resulted in mostly normal findings.

3    Tr. 29.  The ALJ found that results of a September 2012 evaluation established that

4    he is not as limited as he alleged.  Tr. 29 (citing Tr. 430-48).  Although Plaintiff

5    was easily distracted and had limited insight, judgment, and memory; the evaluator

6    noted Plaintiff was cooperative and humorous with excellent hygiene and a normal

7    mood and congruent affect.  Tr. 29 (citing Tr. 430-34).  His speech was fluent,

8    with normal tone, and he demonstrated adequate comprehension.  Tr. 29 (citing Tr.

9    434).  He was within normal limits regarding his thought process, thought content,

10   orientation, perception, fund of knowledge, and abstract thinking.  Tr. 29 (citing

11   Tr. 434).

12       The ALJ further noted that during a January 2015 evaluation, despite his

13   allegations of disability symptoms, he was noted as being pleasant and cooperative

14   with fair social skills.   Tr. 29 (citing Tr. 460-63).  Although he initially reported as

15   being mildly anxious, Tr. 460, the ALJ noted there was no evidence of agitation or

16   retardation; his responses were tangential but otherwise his speech was normal; he

17   had intact remote memory and normal abstract thinking and judgment; and his

18   thinking was logical and goal directed and had no difficulty following the

19   conversation or participating in the intellectual testing.  Tr. 29 (citing Tr. 460-63).

20   The ALJ further noted that during this evaluation, Plaintiff complained of

depression, but noted that "the usual level of severity of his depression as about 3 ½ out of 10" and his anxiety a "3 or 4" out of 10.  Tr. 28 (citing Tr. 454).

"Where evidence is subject to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Burch*, 400 F.3d at 679.  Because the ALJ rationally found that the medical evidence did not support the severity of Plaintiff's symptom complaints, the ALJ's conclusion must be upheld.

### 3.  Inconsistent Statements

The ALJ noted that Plaintiff made various inconsistent statements that suggested he was not entirely reliable.  Tr. 28-29.  In evaluating the credibility of symptom testimony, the ALJ may utilize ordinary techniques of credibility evaluation, including prior inconsistent statements.  *See Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

The ALJ noted that in August 2011, Plaintiff reported that he had never been abused a child, Tr. 429, which is inconsistent with reports he made to evaluators.  Tr. 28 (citing Tr. 430, 454-55, 458).  Also in August 2011, after the date of alleged onset, he denied a need for mental health treatment, which is inconsistent with his current claims of disability due to depression and anxiety.  Tr. 28 (citing Tr. 429).  Plaintiff does not challenge the ALJ's reliance on these inconsistent statements.

Finally, the ALJ cited inconsistencies in Plaintiff's reports regarding his prior substance abuse history and treatment.  Tr. 31 (citing Tr. 429, 457, 459).

Here, Plaintiff accurately notes that the information in Dr. Dougherty's report indicates that Plaintiff did disclose his prior drug use and treatment, ECF No. 13 at 15 (citing Tr. 457); thus, the ALJ's conclusion about statements to Dr. Dougherty is not supported by substantial evidence.

Here, the ALJ identified inconsistent statements, supported by the record, which were a clear and convincing reason to find Plaintiff's symptom complaints less than credible.

### 4. Daily Activities

The ALJ found Plaintiff's "daily activities were not limited to the extent one would expect given his complaints of disabling symptoms and limitations." Tr. 29. A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair*, 885 F.2d at 603 (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). "Even where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a *totally debilitating* impairment." *Molina*, 674 F.3d at 1113 (emphasis

added).  Notwithstanding, it is well-established that a claimant need not "vegetate

in a dark room" in order to be deemed eligible for benefits.  *Cooper v. Bowen*, 815

F.2d 557, 561 (9th Cir. 1987).

Here, the ALJ concluded that Plaintiff was capable of performing his own

personal care and basic activities of daily living.  Specifically, the ALJ noted that

Plaintiff was independent in self-care and had no problems with bathing,

grooming, or dressing himself.  Tr. 29 (citing Tr. 461-62).  Plaintiff described his

typical day as "wash clothes … cook meals…try and stay out of trouble…work on

my SSI claim and stuff."  Tr. 29 (citing Tr. 431).  Plaintiff explained that he

cooked simple things, but that he does not like to cook, and that he is able to do the

dishes, sweep, mop, and do his own laundry, but he "tries to put his chores off"

because he does not like doing them.  Tr. 29 (citing Tr. 461).  He is physically able

to work all day.  Tr. 29 (citing Tr. 461).

Moreover, as to Plaintiff's alleged impairments, the ALJ noted that Plaintiff

stated he "becomes easily bored when working," making it hard for him to persist

at tasks.  Tr. 29.  However, the ALJ noted that Plaintiff was able to play video

games for up to two or three hours at a time and "concentrates okay when doing

so," and Plaintiff also stated that he likes to watch football and can concentrate

well on a Seahawks game.  Tr. 29 (citing Tr. 461).  The ALJ concluded that this

evidence suggests that Plaintiff "was able to maintain adequate attention, focus,

and concentration as long as it was for a topic or activity for which he was

interested." Tr. 29.

The ALJ noted that the record indicates that Plaintiff "does not drive," Tr. 29

(citing Tr. 461), but further noted this was not due to an inability to drive, but due

to Plaintiff owed court fines and unpaid child support for his three-year old son,

Tr. 29 (referring to Tr. 59). This demonstrates that his not driving is not the result

of his impairments.

The ALJ further noted that although Plaintiff alleged he distrusted and

disliked people, he had been in a serious relationship (and had a child) since the

alleged onset date. Tr. 29. Plaintiff admitted that he had friends with whom he

had regular contact, one of whom was helping him pay rent on his apartment. Tr.

30 (citing Tr. 430, 462). The ALJ found that despite his symptom complaints,

Plaintiff was able to engage in a relatively normal level of daily activity, at least

routine social interactions, and activities that require focus and concentration. Tr.

30.

Moreover, the ALJ found Plaintiff's ability to engage in work activities after

the date of onset was inconsistent with the severity of his alleged symptom

complaints. Tr. 30. Here, Plaintiff performed seasonal work (four months at a

time) during the summers of 2009, 2010, 2012, where his pay varied from $14 to

$30 per hour depending upon the task assigned (general labor or painting). Tr. 25.

His work involved painting lines on tennis courts.  Tr. 25.  He also performed

some temporary jobs in 2013 and worked as a fast food cook in 2014.  Tr. 25.  An

ALJ may support his credibility finding by reviewing a number of factors,

including the claimant's work record.  *See Smolen*, 80 F.3d at 1284 ("In evaluating

the credibility of the symptom testimony, the ALJ must also consider the factors

set out in S.S.R. 88-13. . . Those factors include the claimant's work record . . .")

(citation omitted).

Here, the ALJ identified evidence of daily activities and abilities that are

inconsistent with the severity of symptoms Plaintiff alleges.  Even if the evidence

of Plaintiff's daily activities may be interpreted more favorably to the Plaintiff, it is

susceptible to more than one rational interpretation, and therefore the ALJ's

conclusion must be upheld.  *See Burch*, 400 F.3d at 679.  Thus, Plaintiff's daily

activities were reasonably considered by the ALJ as inconsistent with his

complaints of disabling symptoms and limitations.

*5.  Work History*

The ALJ found Plaintiff had a marginal work history prior to the alleged disability onset date, "suggesting his current lack of employment is not related to his impairments but to lifestyle choices and other factors" such as substance abuse and a criminal history with repeated incarcerations.  Tr. 30.

Evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a claimant's testimony that he is unable to work.  *Thomas*, 278 F.3d at 959; *see also* 20 C.F.R. § 416.929(c)(3) (in assessing symptoms, fact-finder "will consider all of the evidence presented, including information about [claimant's] prior work record...").  In support of his finding, the ALJ stated "as mentioned earlier, the record reflects work activity after the alleged onset date.  Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that [Plaintiff's] daily activities were somewhat greater than he generally reported."  Tr. 30.  The ALJ further pointed to the fact that Plaintiff worked as a fast food cook while on work release in early 2014, but returned home to Washington as soon as his supervised probation period was over.  Tr. 30.

Plaintiff challenges the ALJ's conclusion, contending the ALJ failed to take into account Plaintiff's age, as he was 19 at his alleged onset date.  ECF No. 13 at 12-13.  Plaintiff cites no authority for the proposition that the ALJ should not take

into account the work history of a younger individual. Moreover, age is irrelevant

to the ALJ's consideration that Plaintiff's lack of employment was attributed to his

lifestyle choices, including criminal history and substance abuse, not due to his

impairments. There is substantial evidence in the record regarding Plaintiff's

alcohol abuse and criminal history. *See, e.g.*, Tr. 455, 458 (Plaintiff's testimony

that he had been in jail about 200 times).

Plaintiff further alleges he was suffering severe impairments prior to his

alleged onset date, which prevented him from being gainfully employed, which

should not be used to discredit him. ECF No. 13 at 12-13. Here, Plaintiff's

argument fails to address the fact that the ALJ found that Plaintiff was employed as

a fast food cook and left that employment for reasons unrelated to his impairments;

he ended his employment when his probation was complete. Plaintiff's arguments

do not undermine the ALJ's conclusion nor establish that the ALJ's conclusion is

unsupported in the record.

Moreover, the ALJ found Plaintiff's receipt of unemployment benefits

during the first and second quarters of 2013, which was during the alleged

disability period, undermined his credibility. Tr. 30. Receipt of unemployment

benefits diminishes credibility when the claimant holds himself out as capable of

and available for work. *Carmickle*, 533 F.3d at 1161-62. Here the ALJ noted that

in order to be eligible for unemployment benefits in Washington state, a person

must be physically able and available to work, and actively seeking suitable work. Tr. 30 (citing RCW 50.20.010). Plaintiff's only challenge to the ALJ's finding is that Plaintiff's brief receipt of unemployment benefits is consistent with his "numerous attempts (and failure) to earn a living, and supports his allegations of disabling psychological impairments." ECF No. 13 at 13. Plaintiff failed to address the ALJ's determination that Plaintiff had to hold himself out as able to work in order to receive the benefits, which is inconsistent with his claims of disability.

Even if the evidence regarding Plaintiff's work history may be interpreted more favorably to the Plaintiff, it is susceptible to more than one rational interpretation, and therefore the ALJ's conclusion must be upheld. *See Burch*, 400 F.3d at 679. Accordingly, the ALJ properly considered Plaintiff's marginal work history and his representations with respect to his ability to work when claiming unemployment benefits in assessing Plaintiff's symptom complaints.

### 6. *Criminal History and Crime of Dishonesty*

The ALJ found that Plaintiff's criminal history, including a crime of dishonesty, undermined his credibility. Tr. 30. In support of his finding, the ALJ noted that Plaintiff reported that he had been in jail about 200 times, most recently in late 2014 for harassment. Tr. 30 (citing Tr. 455, 458). In addition, Plaintiff testified that he was incarcerated for 18 months in North Dakota for burglary. Tr.

30 (referring to Tr. 60).  The ALJ specifically noted that burglary is a crime of

dishonesty, which further undercut Plaintiff's overall veracity and credibility.  Tr.

30.  It was proper for the ALJ to consider this factor in making the adverse

credibility determination.  *See Bunnell*, 947 F.2d at 346; *see also Hardisty v.

Astrue,* 592 F.3d 1072, 1080 (9th Cir. 2010) (relying in part on a prior conviction

when assessing credibility has a reasonable basis in law); *Albidrez v. Astrue*, 504

F.Supp.2d 814, 822 (C.D. Cal. 2007) (convictions for crimes of moral turpitude are

proper basis for adverse credibility finding).

Plaintiff challenges the ALJ's finding contending that "the ALJ failed to

consider that [Plaintiff's] undeniably significant criminal history is a function of

his mental impairments."  ECF No. 13 at 14.  Plaintiff offers no support in the

record for this speculative, conclusory allegation, so this Court declines to address

that argument.  *See Carmickle*, 533 F.3d at 1161 n.2.

Next, Plaintiff challenges the ALJ's finding, contending that Social Security

Ruling (SSR) 16-3p precludes considering a Plaintiff's criminal history.  ECF No.

13 at 14.  SSR 16-3p is not applicable here because it became effective March 28,

2016, after the date of the ALJ's decision.  *See Garner v. Colvin*, 626 F. App'x

699, 701 (9th Cir. 2015) (unpublished).  The ALJ reasonably relied on Plaintiff's

criminal history and prior crime of dishonesty in assessing the credibility of

Plaintiff's symptoms complaints.

**B. RFC Determination**

Plaintiff contends the ALJ failed to incorporate into the RFC limitations identified by lay witness Mr. Lewis and by medical sources Dr. Burdge and Dr. Dougherty. ECF No. 13 at 15-19.

*1. Lay Witness Testimony*

Mr. Lewis provided a written statement. Tr. 389. The ALJ gave the statement partial weight. Tr. 32.

An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Social Security*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ. If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

First, the ALJ found that the "statement merely reiterated [Plaintiff's] subjective allegations about his mental health symptoms and limitations." Tr. 32. "[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. Thus, where the ALJ has found a claimant's testimony to be not credible, the ALJ may reject lay testimony that

essentially reproduces the claimant's testimony. *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 694 (9th Cir. 2009). Plaintiff has not set forth any limitation in Mr. Lewis' statement that was not also set forth in Plaintiff's symptom complaints. Because the ALJ properly rejected Plaintiff's allegations that exceeded the limitations in the RFC finding, the ALJ properly rejected Mr. Lewis's statements that also exceeded the RFC finding.

Next, the ALJ noted that Mr. Lewis is not a medical professional and the limitations he alleged were not entirely consistent with the clinical observations of the medical professionals. Tr. 32. Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Plaintiff did not challenge this finding, thus it is waived. *Carmickle*, 359 F.3d at 1197-98.

As to the merits, Plaintiff contends that the ALJ should have incorporated limitations related to Mr. Lewis's statements that Plaintiff was not able to perform effectively without working directly with a supervisor, Plaintiff was rarely on time, and would storm off. ECF No. 13 at 16. Here, the ALJ determined Mr. Lewis's limitations were inconsistent with the medical evidence. Tr. 32; *see, e.g.*, Tr. 432 (Dr. Burdge's finding of no or mild limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary

tolerances without special supervision; perform routine tasks without special supervision; and moderate limitations in the ability to complete a normal work day and work week without interruption from psychological based symptoms and maintain appropriate behavior in a work setting); Tr. 470 (Dr. Dougherty opined that Plaintiff had no limitations in his ability to understand and remember simple instructions, carry out simple instructions, or the ability to make judgments on simple work-related decisions; mild limitations on the ability to interact appropriate with the public and respond appropriately to usual work situations and to change in a routine work setting and moderate limitations in the ability to interact with supervisors and coworkers); Tr. 463 (Dr. Dougherty opined Plaintiff should be able to maintain regular attendance in the workplace, and Plaintiff's anxiety and depression are not so severe as to provoke serious interruptions during a normal workday or work week).  The ALJ gave germane reasons to the extent that the ALJ gave the lay witness testimony limited weight.

  *2. Medical Source Opinions*

  Plaintiff contends that the ALJ erred by failing to include limitations assessed by Dr. Burdge and Dr. Dougherty in Plaintiff's RFC.  ECF No. 13 at 17-19.

  On September 13, 2012, Dr. Burdge conducted a psychological/psychiatric evaluation and diagnosed Plaintiff with Anxiety Disorder NOS and Antisocial

Personality Disorder.  Tr. 430-48.  He assessed moderate[2] limitations in Plaintiff's ability to communicate and perform effectively in work setting, complete a normal work day and work week without interruptions from psychologically based symptoms, and maintain appropriate behavior in a work setting.  Tr. 433.

On January 12, 2015, Dr. Dougherty conducted a psychological evaluation and diagnosed Plaintiff with ADHD; anxiety disorder, NOS with reported history of panic attacks; dysthymia; alcohol dependence, in reported sustained remission; cannabis abuse, in reported sustained remission probable FAE; borderline intellectual functioning, antisocial personality disorder with schizoid features.  Tr. 454-71.  He assessed moderate[3] limitations in Plaintiff's ability to interact appropriately with supervisors and to interact appropriately with co-workers.  Tr. 470.  The ALJ credited both Dr. Burge and Dr. Dougherty's opinions.  Tr. 31.

The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.  *See Stubbs–Danielson v. Astrue,* 539 F.3d 1169, 1174 (9th Cir. 2008).  Here, the ALJ's RFC included the following, Plaintiff "is limited to

_____

[2] A moderate limitation is defined as "significant limits on the ability to perform one or more basic work activity."  Tr. 432.

[3] A moderate limitation is defined as "more than a slight limitation in this area but the individual is still able to function satisfactorily."  Tr. 469.

tasks that can be learned in 30 days or less, involving no more than simple work-related decisions and few workplace changes. He is limited to rare (<10% of workday) public interaction. He is able to work with coworkers on a casual or superficial basis, but would not do well as a member of a highly interactive or interdependent work group." Tr. 26.

Plaintiff contends the RFC does not incorporate Dr. Dougherty's moderate limitations regarding interaction with supervisors and coworkers. However, the definition of moderate is "more than a slight limitation" but "the individual is still able to function satisfactorily." Tr. 469. Moreover, the ALJ included limitations related to coworker interaction. Tr. 26.

Plaintiff further asserts that the RFC does not incorporate Dr. Burdge's moderate impairments. The definition of moderate in Dr. Burdge's evaluation is "significant limits on the ability to perform one or more basic work activity. Tr. 432, *compare* Tr. 432 (definitions of marked and severe). Here, the ALJ reasonably interpreted the moderate limitations into the RFC by limiting the types of tasks, and limiting public and coworker interaction. *See Stubbs–Danielson,* 539 F.3d at 1171-74 (finding that an RFC that limited a claimant to simple, repetitive tasks with limitations on public contact accounted for multiple, moderate mental limitations). Plaintiff has not demonstrated that the ALJ's RFC finding fails to adequately account for the assessed limitations.

**C. Listing 12.05C**

Plaintiff contends that the ALJ erred by failing to consider whether Plaintiff met Listing 12.05C.  ECF No. 13 at 19.

At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment.  20 C.F.R. § 404.1520(a)(4)(iii).  The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience."  20 C.F.R. § 404.1525.  To meet a listed impairment, a claimant must establish that she meets each characteristic of a listed impairment relevant to her claim.  20 C.F.R. § 404.1525(d).  The claimant bears the burden of establishing she meets a listing.  *Burch*, 400 F.3d at 683.  If a claimant meets the listed criteria for disability, she will be found to be disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii).

Listing 12.05 describes symptoms a claimant must establish to be considered intellectually disabled.  To meet Listing 12.05, a claimant must satisfy the diagnostic description of "intellectual disability" in the introductory paragraph to 12.05 and any one of four sets of criteria (paragraphs A through D).  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.

> A claimant satisfies Listing 12.05C, demonstrating "intellectual disability" and ending the five-step inquiry, if he can show: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of

60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation.

*Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C).

Listing 12.05C requires a valid full-scale, verbal, or performance IQ score of 60 to 70. 20 C.F.R. pt. 404, subpt. P, app.1, § 12.05C. Plaintiff's full scale IQ score was 71. Tr. 461, 464.[4] However, Plaintiff contends he meets the listing because he has a "Full Scale IQ that is within a range of 68 to 76 with a 95% confidence level." ECF No. 13 at 19 (citing Tr. 461). The legal authority cited by Plaintiff does not support the contention that the ALJ should rely on the range set forth in the confidence level rather than the composite score.[5] Since Plaintiff has not demonstrated that he has a qualifying IQ score, Plaintiff has not established that the ALJ erred in failing to considering Listing 12.05C.

---

[4] Dr. Dougherty further concluded that Plaintiff's report "of his functional abilities do not suggest the presence of an intellectual disability." Tr. 462.

[5] The Court notes that Plaintiff provided no legal authority to support this contention in the opening brief. ECF No. 13 at 19. Plaintiff provided legal authority only in the reply brief. ECF No. 19 at 10. Counsel is reminded to provide legal authority in support of his arguments in the opening brief or else the argument will not be considered.

**CONCLUSION**

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED**:

1.  Plaintiff's motion for summary judgment (ECF No. 13) is **DENIED.**

2.  Defendant's motion for summary judgment (ECF No. 18) is **GRANTED**.

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE THE FILE.**

DATED September 15, 2017.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE